IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

CHARLES H.,

          Plaintiff,

   v.

COMMISSIONER, SOCIAL
SECURITY ADMINISTRATION,

        Defendant.

CIVIL ACTION FILE NO.

1:17-CV-2654-JFK

## FINAL OPINION AND ORDER

Plaintiff in the above-styled case brings this action pursuant to § 205(g) of the

Social Security Act, 42 U.S.C. § 405(g), to obtain judicial review of the final decision

of the Commissioner of the Social Security Administration which denied his disability

application. For the reasons set forth below, the court **ORDERS** that the

Commissioner's decision be **REVERSED** and that the case be **REMANDED** for

further proceedings.

## I.    Procedural History

Plaintiff filed an application for supplemental security income on January 14,

2013, alleging that he became disabled on September 1, 2008. [Record ("R.") at 13,

141-46]. After Plaintiff's application was denied initially and on reconsideration, an

administrative hearing was held on August 27, 2015. [R. at 13, 26-89]. The Administrative Law Judge ("ALJ") issued a decision denying Plaintiff's application on October 15, 2015, and the Appeals Council denied Plaintiff's request for review on May 23, 2017. [R. at 1-6, 13-25]. Plaintiff filed his complaint in this court on July 17, 2017, seeking judicial review of the Commissioner's final decision. [Doc. 4]. The parties have consented to proceed before the undersigned Magistrate Judge.

## II. Facts

The ALJ found that Plaintiff has depression, schizophrenia, and polysubstance dependence. [R. at 15]. Although these impairments are "severe" within the meaning of the Social Security regulations, the ALJ found that Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. [R. at 15-17]. Plaintiff has no past relevant work, but the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. [R. at 20]. As a result, the ALJ concluded that Plaintiff has not been under a disability since January 14, 2013, the date the application was filed. [R. at 21].

The decision of the ALJ [R. at 13-21] states the relevant facts of this case as modified herein as follows:

The claimant's allegations as presented in his testimony are that he does not like being around people; however, he has not had any recent violent episodes with others. The claimant has auditory hallucinations, but they are not loud when he takes medications. His mood is calm on most days. The claimant has had a roommate for three years, and he does volunteer work. He also does lawn work at his mother's house. The claimant bathes himself, prepares meals, cleans his room, makes his bed, and does laundry.

The claimant has a history of depression, alcohol dependence, and heroin addiction. (Exhibits 2F and 3F). He last used heroin in 2012 and alcohol in November 2012. His driver's license is suspended due to a DUI. In November 2012, the claimant was admitted to a hospital after drinking alcohol and taking four hydrocodone pills. He was diagnosed with alcohol-induced psychosis and alcohol dependence. (Exhibit 4F). He previously attended group counseling and currently participates in individual counseling.

In October 2013, the claimant reported that he was doing "fair." He ran out of doxepin at the end of the previous month. He was diagnosed with schizophrenia, paranoid type, and alcohol abuse with a Global Assessment of Functioning ("GAF") score of 55. (Exhibit 6F). According to the Diagnostic and Statistical Manual of

Mental Disorders, 4th Edition, a GAF of between 51 and 60 represents moderate symptoms or moderate difficulty in social, occupational, or school functioning. In December 2013, the claimant's mood was within normal limits. (Exhibit 6F).

In February 2014, the claimant reported that he was doing well. In July 2014, the claimant exhibited partial compliance with his medications. His mood was within normal limits. In October 2014, the claimant said that he was doing "pretty good." (Exhibit 6F).

In February 2015, the claimant denied using alcohol or recreational drugs. He denied visual hallucination, paranoid delusions, ideas of reference, thought broadcasting, and insertion. He also reported that his auditory hallucination had "quieted down a lot." (Exhibit 6F). In June 2015, the claimant reported being compliant with medications and tolerating them well. He stated that his auditory hallucinations/paranoid delusions had decreased significantly in frequency/severity and that they were very sporadic. His mood was within normal limits, and his affect was flat. (Exhibit 7F).

As for the opinion evidence, in March 2013, consultative examiner Valerie Besses, Ph.D., examined the claimant and noted that rapport was easily established and that the claimant possessed adequate social skills. The claimant stated that he lived

AO 72A
(Rev.8/82)

with a roommate. He asserted that he was capable of living independently. He maintained his personal hygiene, watched television, and performed chores independently. The claimant said that he was incapable of directing his daily routine independently. He asserted that he was unable to remain focused and attentive when carrying out his daily routine. His roommate helped remind him to take his medication. The claimant shopped for groceries and cooked using a microwave. He described his experience with his family as good. He stated that he had a couple of friends. For recreation, the claimant enjoyed fishing, roller skating, and playing basketball. He attended community meetings weekly. (Exhibit 5F).

Dr. Besses diagnosed the claimant with polysubstance dependence and malingering. Dr. Besses noted that all the documentation received revealed inconsistencies in his symptom report and only alcohol-induced psychotic symptoms. There were no signs and symptoms of a valid mental illness other than his years of underreported substance abuse. He also did not receive any psychiatric treatment or medication management of any such symptoms during his lengthy incarcerations, which suggested the absence of symptoms while in prison and sober. Dr. Besses opined that the claimant was capable of understanding, remembering, and carrying out simple and detailed instructions. His concentration was not impaired for basic

5

work-related functions. He was not impaired for sustaining persistence and pace for timely completion of assigned tasks. The claimant's ability to interact appropriately with coworkers, supervisors, and the public was not impaired. Dr. Besses believed that the claimant was able to adhere to a typical work schedule. He was also able to adapt to the stressors of a typical work environment. (Exhibit 5F).

In April 2013, State Agency medical consultant Rolake Tomori, Ph.D., reviewed the record and determined that the claimant's mental impairment imposed no restriction on activities of daily living; no difficulties in maintaining social functioning; and mild difficulties in maintaining concentration, persistence, and pace. Dr. Tomori also noted that the claimant had one or two repeated episodes of decompensation, each of extended duration. (Exhibit 1A).

In July 2013, State Agency medical consultant Lyndis Anderson, Ph.D., reviewed the record and determined that the claimant's mental impairment imposed a moderate restriction on activities of daily living; moderate difficulties in maintaining social functioning; and moderate difficulties in maintaining concentration, persistence, and pace. Dr. Anderson also noted that the claimant had one or two repeated episodes of decompensation, each of extended duration. (Exhibit 3A).

AO 72A
(Rev.8/82)

Additional facts will be set forth as necessary during discussion of Plaintiff's arguments.

## III.    Standard of Review

An individual is considered to be disabled if he is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42 U.S.C. § 423(d)(1)(A).    The impairment or impairments must result from anatomical, psychological, or physiological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques and must be of such severity that the claimant is not only unable to do his previous work but cannot, considering age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy.  See 42 U.S.C. §§ 423(d)(2) and (3).

"We review the Commissioner's decision to determine if it is supported by substantial evidence and based upon proper legal standards."  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion."    Id. at 1440.    "Even if the evidence preponderates against the

[Commissioner's] factual findings, we must affirm if the decision reached is supported by substantial evidence." Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). "'We may not decide the facts anew, reweigh the evidence, or substitute our judgment for that of the [Commissioner].'" Phillips v. Barnhart, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983)).

"The burden is primarily on the claimant to prove that he is disabled, and therefore entitled to receive Social Security disability benefits." Doughty v. Apfel, 245 F.3d 1274, 1278 (11th Cir. 2001) (citing 20 C.F.R. § 404.1512(a)). Under the regulations as promulgated by the Commissioner, a five step sequential procedure is followed in order to determine whether a claimant has met the burden of proving his disability. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. At step one, the claimant must prove that he has not engaged in substantial gainful activity. See id. The claimant must establish at step two that he is suffering from a severe impairment or combination of impairments. See id. At step three, the Commissioner will determine if the claimant has shown that his impairment or combination of impairments meets or medically equals the criteria of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. See Doughty, 245 F.3d at 1278; 20 C.F.R. §§ 404.1520, 416.920. If the claimant is able to make this showing, he will be considered

AO 72A

(Rev.8/82)

disabled without consideration of age, education, and work experience. See id. "If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work." Doughty, 245 F.3d at 1278. "At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work." Id. If, at any step in the sequence, a claimant can be found disabled or not disabled, the sequential evaluation ceases and further inquiry ends. See 20 C.F.R. §§ 404.1520(a), 416.920(a).

## IV. Findings of the ALJ

The ALJ made the following findings of fact and conclusions of law:

1. The claimant has not engaged in substantial gainful activity since January 14, 2013, the application date. (20 C.F.R. § 416.971, *et seq.*).

2. The claimant has the following severe impairments: depression, schizophrenia, and polysubstance dependence. (20 C.F.R. § 416.920(c)).

3. The claimant does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (20 C.F.R. §§ 416.920(d), 416.925, and 416.926).

4. The claimant has the residual functional capacity to perform a full range of work at all exertional levels but with the following nonexertional limitations: the

9

claimant is limited to the performance of simple, routine tasks involving no more than simple, short instructions and simple work-related decisions with few work place changes and only occasional interaction with the public.

5.   The claimant has no past relevant work.  (20 C.F.R. § 416.965).

6.   The claimant was born on February 28, 1964, and was 48 years old, which is defined as a younger individual age 18-49, on the date the application was filed. (20 C.F.R. § 416.963).

7.   The claimant has a limited education and is able to communicate in English.  (20 C.F.R. § 416.964).

8.   Transferability of job skills is not an issue because the claimant does not have past relevant work.  (20 C.F.R. § 416.968).

9.   Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.  (20 C.F.R. §§ 416.969 and 416.969(a)).

10.  The claimant has not been under a disability, as defined in the Social Security Act, since January 14, 2013, the date the application was filed.  (20 C.F.R. § 416.920(g)).

[R. at 15-21].

## V.   Discussion

Plaintiff argues that the ALJ's decision denying his disability application should

be reversed.  [Doc. 10].  Plaintiff's primary argument is that the ALJ erred by failing

to evaluate whether Plaintiff's mental impairments met or equaled Listing 12.05C for

10

"intellectual disability." [Id. at 7-17]. In addition, according to Plaintiff, the ALJ's residual functional capacity ("RFC") assessment does not adequately account for all of the limitations resulting from Plaintiff's mental impairments. [Id. at 18-21]. Plaintiff also contends that the ALJ erred in relying on a finding of malingering made by consultative examiner Dr. Valerie Besses. [Id. at 4-7]. For the reasons discussed *infra*, the court finds that the decision of the ALJ was not supported by substantial evidence and was the result of a failure to apply the proper legal standards.

The most significant problem with the decision of the ALJ is her failure to evaluate whether Plaintiff met or equaled Listing 12.05C[1] for "intellectual disability," which was previously referred to as "mental retardation."[2] "In order to *meet* a listing,

---

[1]"Although Listing 12.05 has been amended since the ALJ issued his decision, we apply Listing 12.05C as it read on the date of the ALJ's decision." Rudolph v. Comm'r, Social Security Admin., 709 Fed. Appx. 930, 932 (11th Cir. 2017) (citing Revised Medical Criteria for Evaluating Mental Disorders, 81 Fed. Reg. 66138, 66138 n.1, 66167 (September 26, 2016) (amending Listing 12.05 and noting that the Social Security Administration "expect[s] the Federal courts will review [its] final decisions using the rules that were in effect at the time [it] issued the decisions")).

[2]The ALJ found that Plaintiff's depression, schizophrenia, and polysubstance dependence were severe impairments, but the ALJ did not find that Plaintiff had a severe intellectual impairment. [R. at 15]. The Eleventh Circuit has stressed, "[A]n impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Brady v. Heckler, 724 F.2d 914, 920 (11th Cir. 1984) (citation and internal quotation

11

the claimant must (1) have a diagnosed condition that is included in the listings and (2) provide objective medical reports documenting that this condition meets the specific criteria of the applicable listing and the duration requirement. . . . In order to *equal* a listing, the medical findings must be at least equal in severity and duration to the listed findings." Wilkinson on Behalf of Wilkinson v. Bowen, 847 F.2d 660, 662 (11th Cir. 1987) (emphasis in original) (citing 20 C.F.R. § 416.925). The burden is on the claimant to show that his impairments meet or equal a listing. See Curry v. Astrue, 650 F. Supp. 2d 1169, 1176 (N.D. Fla. 2009) ("The claimant has the burden of proving that his impairments meet or equal a listed impairment . . . .") (citing Sullivan v. Zebley, 110 S. Ct. 885, 891 (1990)). "For a claimant to show that his impairment matches a listing, it must meet *all* of the specified medical criteria. An impairment that manifests only some of those criteria, no matter how severely, does not qualify." Zebley, 110 S. Ct. at 891 (emphasis in original).

To meet Listing 12.05C for intellectual disability, a claimant must show that he has a "valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]" 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05C. Plaintiff is able

marks omitted).

12

to satisfy the "other impairment" requirement because the ALJ found that Plaintiff's depression, schizophrenia, and polysubstance dependence rose to the level of severe impairments. [R. at 15]. With regard to the IQ requirement, Social Security regulations provide, "In cases where more than one IQ is customarily derived from the test administered, e.g., where verbal, performance, and full scale IQs are provided in the Wechsler series, we use the lowest of these in conjunction with 12.05." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.00D(6)(c). Plaintiff is able to meet the IQ requirement for Listing 12.05C. On February 23, 2010, Dr. Terrance Mills, Ph.D., conducted a psychological evaluation of Plaintiff. [R. at 243-46]. Dr. Mills found that on the WAIS-III Wechsler Adult Intelligence Scale, Plaintiff had a verbal scale IQ of 69, a performance scale IQ of 70, and a full scale IQ of 67. [R. at 246].

"In addition to a valid I.Q. score meeting the requirements of Listing 12.05C, a plaintiff must also satisfy the diagnostic description in the introductory paragraph of Listing 12.05C." Winston v. Barnhart, 421 F. Supp. 2d 1355, 1357 (N.D. Ala. 2006). The diagnostic description of intellectual disability in Listing 12.05 states, in pertinent part, "Intellectual disability refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the

13

impairment before age 22." 20 C.F.R. Part 404, Subpart P, Appendix 1 § 12.05. Thus, the diagnostic description consists of three requirements: (1) significantly subaverage general intellectual functioning; (2) deficits in adaptive functioning; and (3) the deficits must have initially manifested before age 22. See Crayton v. Callahan, 120 F.3d 1217, 1219 (11th Cir. 1997) ("To be considered for disability benefits under section 12.05, a claimant must at least (1) have significantly subaverage general intellectual functioning; (2) have deficits in adaptive behavior; and (3) have manifested deficits in adaptive behavior before age 22."); Winston, 421 F. Supp. 2d at 1357-58.

A claimant is able to meet the first requirement, significantly subaverage general intellectual functioning, by showing a valid IQ score of 70 or below. See Winston, 421 F. Supp. 2d at 1358 (finding that "a valid IQ score of 70 or below satisfies the first requirement of the diagnostic description"). In the present case, as previously noted, Dr. Mills found that Plaintiff's verbal IQ was 69, his performance IQ was 70, and his full scale IQ was 67. [R. at 246]. Dr. Mills also diagnosed mild mental retardation and a cognitive disorder and explained that there was no major discrepancy between Plaintiff's verbal IQ and performance IQ scores. [R. at 243, 246]. Dr. Mills stated that while Plaintiff is a slow reader, he is able to read at the high school level which "is unusual for someone . . . with Mild Mental Retardation." [R. at 243]. However, Dr.

14

Mills concluded, "This examiner believes that this is an accurate testing of this individual's cognitive functioning on the date of testing." [R. at 243]. Because Plaintiff has a valid IQ score of 70 or below, he is able to show that he has significantly subaverage general intellectual functioning, which is the first requirement in the diagnostic description of Listing 12.05C.

To meet the second and third requirements in the diagnostic description of intellectual disability in Listing 12.05, a claimant must show the presence of deficits in adaptive functioning and must show that the deficits initially manifested before age 22. See Crayton, 120 F.3d at 1219. "Even though the SSA has not specifically defined 'deficits in adaptive functioning,' the Diagnostic and Statistical Manual of Mental Disorders ('DSM') states that adaptive functioning 'refers to how effectively individuals cope with common life demands and how well they meet the standards of personal independence expected of someone in their particular age group, sociological background, and community setting.'" O'Neal v. Comm'r of Social Security, 614 Fed. Appx. 456, 459 (11th Cir. 2015) (quoting DSM–IV–TR at 42). The Eleventh Circuit has explained, "Under our decision in Hodges v. Barnhart, 276 F.3d 1265 (11th Cir. 2001), this Court applies a rebuttable presumption that the claimant's intellectual disability initially manifested before he turned twenty-two if he submits a valid low IQ

15

score from a test taken after he has turned twenty-two." Rudolph, 709 Fed. Appx. at 932 (citing Hodges, 276 F.3d at 1266, 1269). "[A] valid IQ score of 60 to 70 gives rise to that presumption." Id. (citing Hodges, 276 F.3d at 1269). "The upshot is that a claimant who shows that his IQ is in the range of 60 through 70 and that he has a 'a physical or other mental impairment imposing an additional and significant work-related limitation of function' has satisfied the requirements of Listing 12.05C unless the Commissioner can rebut the Hodges presumption." Id. (citing 20 C.F.R. Part 404, Subpart P, Appendix 1, § 12.05C). "[T]he Commissioner may rebut the presumption with evidence relating to a claimant's daily life." James v. Comm'r, Social Security Admin., 657 Fed. Appx. 835, 837 (11th Cir. 2016) (citing Hodges, 276 F.3d at 1269; Lowery v. Sullivan, 979 F.2d 835, 837 (11th Cir. 1992)).

The fact that Plaintiff submitted valid IQ scores of 67, 69, and 70 "should have given rise to the Hodges presumption, and under that presumption [Plaintiff] could have carried his Listing 12.05C burden without presenting any evidence of his intellectual disability manifesting before he turned twenty-two." Rudolph, 709 Fed. Appx. at 933 (citation omitted). "Yet the ALJ's decision never mentions the Hodges presumption[.]" Id. There is also no indication that the ALJ rebutted the presumption that Plaintiff manifested deficits in adaptive functioning before the age of 22.

AO 72A

(Rev.8/82)

The ALJ not only failed to mention the Hodges presumption, the ALJ did not offer any discussion of Listing 12.05C. [R. at 13-21]. Perhaps even more troubling is that the ALJ made no mention of Plaintiff's IQ scores. [Id.]. This omission is particularly glaring given the fact that at the administrative hearing, Plaintiff's attorney specifically pointed out to the ALJ that Plaintiff "has valid I.Q. scores, with a full-scale I.Q. being a 67, and a diagnosis of mild mental retardation, as well as a cognitive disorder." [R. at 31]. Plaintiff's attorney cited to the relevant exhibit containing Dr. Mills' psychological evaluation and also noted that Plaintiff received special education services in school. [Id.]. Despite the evidence offered by Plaintiff in support of his claim that he met or equaled Listing 12.05C, the ALJ only discussed Listings 12.03, 12.04, and 12.09. [R. at 15-17].

Courts in the Eleventh Circuit have held that a finding that a claimant "lacked adaptive deficits as required under the introductory paragraph of Listing 12.05 can be implied from the ALJ's conclusion that [the claimant's] prior work experience indicated that [he] did not have an intellectual disability." James, 657 Fed. Appx. at 838; accord O'Neal, 614 Fed. Appx. at 459-60 (holding that the claimant's years of work and other activities supported the "ALJ's implicit conclusion that, despite his low I.Q. score, Mr. O'Neal does not have sufficient adaptive functioning deficits to meet

17

the requirements of the diagnostic description in Listing 12.05"). However, Plaintiff does not have years of work experience like the claimants in James and O'Neal. The record shows that Plaintiff has had little earnings with only temporary jobs. [R. at 175, 179]. The ALJ, in fact, found that Plaintiff has no past relevant work. [R. at 20]. The evidence reveals that Plaintiff does about six hours of volunteer work each week, performs yard work for his mother, bathes himself, and performs household chores. [R, at 19, 32, 40-42, 53]. The undersigned has found no authority for the proposition that a claimant's ability to perform the minimal activities listed above establishes that the claimant does not have deficits in adaptive functioning when he has no past relevant work.

The Commissioner notes that in Garrett v. Astrue, 244 Fed. Appx. 937, 939 (11th Cir. 2007), the Eleventh Circuit held that limitations of adaptive functioning were not present where the claimant's activities included simple chores, playing cards, building model cars, attending church, watching television, and walking in the mall. [Doc. 11 at 13]. However, unlike the present case, the claimant in Garrett "testified that, with orientation and instruction, he believed he could return to a job as a stock assistant." Id. at 939. In the present case, Plaintiff cannot return to any past relevant work because he has no such past work and his earnings record reveals only temporary jobs

18

with few earnings. [R. at 20, 175, 179]. The court also notes that the DSM-IV-TR states that adults with mild mental retardation "'usually achieve social and vocational skills adequate for minimum self-support, but may need supervision, guidance, and assistance, especially when under unusual social or economic stress.'" DSM-IV-TR at 43. In Ambers v. Heckler, 736 F.2d 1467, 1468-69 (11th Cir. 1984), the Eleventh Circuit held that a claimant with a performance IQ score of 52 met the disability listing for mental retardation and, therefore, was entitled to benefits despite the fact that she "had been previously gainfully employed with that handicap."

In the case before the court, Plaintiff was in special education in elementary school and records show that his grade point average was 0.2 in high school. [R. at 35, 241]. Plaintiff is currently a resident of a supportive housing unit for individuals with mental health problems. [R. at 30-31, 229]. He receives mental healthcare, and a ministry helps him get to medical appointments and makes sure that he takes his medications. [R. at 30-31, 43, 229]. Plaintiff reported that he does not know how to pay bills and that he has never used a checkbook or had a bank account. [R. at 216]. And as previously noted, Plaintiff has a full scale IQ of 67 and he has been diagnosed with mild mental retardation and a cognitive disorder. [R. at 243, 246]. In light of these facts, and given the fact that the ALJ did not even mention either Listing 12.05C

19

or Plaintiff's IQ scores, the court finds that the ALJ failed to apply the proper legal standards and that substantial evidence does not support her finding that Plaintiff does not meet or equal a listed impairment. [R. at 15].

Because remand is warranted based on the significant issues discussed *supra*, and because the ALJ's evaluation of Plaintiff's intellectual impairment could affect the ALJ's assessment of other issues, the court finds it unnecessary to address Plaintiff's remaining arguments. <u>See</u> <u>Demenech v. Secretary of the Dep't of Health and Human Services</u>, 913 F.2d 882, 884 (11th Cir. 1990) (per curiam) (concluding that most of plaintiff's arguments did not need to be addressed because remand was warranted on a significant issue); <u>Jackson v. Bowen</u>, 801 F.2d 1291, 1294 n.2 (11th Cir. 1986) (per curiam) (finding that it was unnecessary to address most of the issues raised by the plaintiff because they were likely to be reconsidered on remand); <u>Shaffer v. Comm'r of Social Security</u>, 2015 WL 5604768, at *2 (M.D. Fla. September 23, 2015) ("Because remand is required on the first issue in this case, it is unnecessary to review Plaintiff's second argument."); <u>Walker v. Astrue</u>, 2013 WL 5354213, at *19 n.22 (N.D. Ga. September 24, 2013) ("Because it is recommended that this case be remanded for further proceedings that could impact the ALJ's assessment of claimant and Shaw's credibility, her RFC, and her ability to perform other work in the national

AO 72A
(Rev.8/82)

economy, the Court need not address the remaining issues raised by the claimant."); <u>Hall v. Astrue</u>, 2012 WL 2499177, at *4 n.8 (N.D. Ala. June 22, 2012) ("Because remand is warranted on these grounds, the court need not consider claimant's other arguments."). Nevertheless, the court notes that all of the evidence that has been submitted during the administrative process should be considered upon remand. <u>See</u> 20 C.F.R. § 404.900(b) (stating that with certain limitations, the Social Security Administration "will consider at each step of the review process any information you present as well as all the information in our records").

## VI.  Conclusion

Based on the forgoing reasons and cited authority, the court concludes that the decision of the ALJ was not supported by substantial evidence and was the result of a failure to apply the proper legal standards. It is, therefore, **ORDERED** that the Commissioner's decision be **REVERSED** and that this action be **REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g) for further proceedings in accordance with the above discussion. The Clerk is **DIRECTED** to enter judgment in favor of Plaintiff.

**IT IS FURTHER ORDERED** that, in the event past due benefits are awarded to Plaintiff upon remand, Plaintiff's attorney may file a motion for approval of

AO 72A

(Rev.8/82)

attorney's fees under 42 U.S.C. §§ 406(b) and 1383(d)(2) no later than thirty days after the date of the Social Security letter sent to Plaintiff's counsel of record at the conclusion of the Agency's past-due benefit calculation stating the amount withheld for attorney's fees. Defendant's response, if any, shall be filed no later than thirty days after Plaintiff's attorney serves the motion on Defendant. Plaintiff shall file any reply within ten days of service of Defendant's response.

**SO ORDERED**, this 29th day of August, 2018.


JANET F. KING
UNITED STATES MAGISTRATE JUDGE

AO 72A

(Rev.8/82)